IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 9, 2005

## JIMMY M. MILLICAN  v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2000-T-181     J. Randall Wyatt, Jr., Judge**

---

### No. M2004-02252-CCA-R3-PC - Filed October 19, 2005

---

The Appellant, Jimmy M. Millican, appeals the Davidson County Criminal Court's denial of his petition for post-conviction relief.  On appeal, Millican argues that he was denied his Sixth Amendment right to the effective assistance of counsel.  After review, the judgment of the post-conviction court is affirmed.

### Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and JAMES CURWOOD WITT, JR., JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the Appellant, Jimmy M. Millican.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and James Sledge, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Procedural Background

In April of 2000, a Davidson County jury found the Appellant guilty of vehicular homicide and driving on a revoked license.  During the second phase of a bifurcated trial, the jury enhanced the Appellant's vehicular homicide conviction to aggravated vehicular homicide based on his prior conviction for driving under the influence of an intoxicant and having a blood alcohol level of .20% or more at the time of the offense at issue in this case.[1]  *See* Tenn. Code Ann. § 39-13-218(a)(3)(A) (2003).  The trial court imposed a twenty-five year sentence for aggravated vehicular homicide to be served concurrently with a six month sentence for driving on a revoked license.  On direct appeal,

---

[1]Blood tests indicated that the Appellant's blood alcohol level was .34 %.

the Appellant's conviction and sentence for aggravated vehicular homicide were affirmed. *State v. Jimmy M. Millican*, No. M2000-02298-CCA-R3-CD (Tenn. Crim. App. at Nashville, Jan. 31, 2002).

The relevant facts, as summarized by this court on direct appeal, established:

According to the state's proof, on the evening of March 3, 1999, a van driven by the severely inebriated defendant crashed into victim Alex Haught's car at the intersection of 20th Avenue and West End Avenue in Nashville and then plowed into Amerigo's Restaurant. Haught died shortly after the accident.

Kym Murphy, a business executive visiting in Nashville, was walking on West End toward Amerigo's Restaurant. As he prepared to cross the street at the intersection, he heard a vehicle accelerate. He testified he believed the van was traveling on 20th Avenue, and further testified the van was traveling at a high rate of speed as it approached the intersection. He stated Haught's car was traveling on West End toward the intersection. Murphy testified he was positive Haught's car had the green light. He said he saw the van cross through the intersection, swerve slightly, and strike the car on the driver's side before the van ricocheted toward the restaurant. Murphy testified he did not see anyone flee the van, and he saw the valet and others approach the van. Murphy stated he first went to assist the victim. After the paramedics arrived, he walked past the van where he observed the defendant sitting in the driver's seat, leaning forward.

Patrick Winningham, the valet at Amerigo's Restaurant, testified he was standing outside the restaurant when he heard a loud crash and saw the vehicles collide. . . . Winningham testified he opened the van's passenger door and saw two Caucasian men inside the van. He stated the van's other doors were not open at that time. According to Winningham, the defendant was in the driver's seat, leaned over the van's console, with his feet underneath the steering wheel. . . . Winningham denied seeing a third person running from the scene.

David Conn, regional manager for Amerigo's Restaurant, testified he was standing near the front door of the restaurant when he heard a loud explosion. Conn said he was outside the restaurant in less than a minute, where he was one of the first people to reach the van. Conn said a liquor bottle fell out of the van when the passenger door was opened. He saw two Caucasian men inside of the van; the defendant, who was in the area of the driver's seat, and the passenger, who was bleeding from the forehead. He testified that a short time later, an apparently "homeless" African American man approached the van from the rear. Conn said the man may have been trying to get in the van, but disappeared after someone asked him to step away. The man did not appear to have been injured.

. . . .

-2-

Michael Parish was eating at Amerigo's Restaurant when he heard a crash and then heard heavy plate glass breaking. He immediately arose from his table and, within ten seconds, walked out the front door of the restaurant to the van. He saw the defendant in the driver's seat area. Parish said the defendant's feet were in the area of the pedals and his buttocks were not completely on the driver's seat. He testified the defendant babbled and smelled of alcohol. According to Parish, the defendant repeatedly said, "I've done something terribly wrong. I've got to get out of here." Parish described the defendant as belligerent. He stated the defendant fought an EMT and cursed.

Jeff Boggs, a former EMT, was in the restaurant when he heard the crash and made his way out to the van. After others removed the passenger from the van, he entered it through the passenger door to tend to the defendant, whom Boggs said was on the floor between the seats. He stated the defendant smelled of alcohol. Boggs said he heard the defendant say, "I've made a big mistake. I'm really sorry." . . .

Officer Philip Vincion testified his reconstruction of the accident showed the van was traveling east on West End as Haught turned left, or west, onto West End from northbound 20th Avenue. Vincion opined the crash was caused when the van failed to stop for a red light and struck Haught's car, which according to witnesses' statements, had a green light. . . .

Vincion testified the van's passenger struck his head and cracked the van's windshield on the passenger side, lacerating the passenger's forehead. A toxicologist testified DNA tests showed the passenger's hair and blood were found in the cracks in the windshield. Vincion stated he observed the defendant in the van after the passenger was placed on a stretcher. He said the defendant was sitting upright on the floor between the seats with his legs wedged between the driver's seat and the area below the steering column. Vincion testified there was a strong odor of alcohol coming from the defendant, who had bloodshot eyes and slurred speech. Vincion stated the defendant told him, "F-ck you. I wasn't driving. Why don't you just go ahead and whip my f-cking-ss. Get the light of out my face, you god-mn motherf-cker." Vincion said the defendant had no visible injuries.

Officer Mack Peebles testified he was dispatched to the accident and observed the defendant sitting in the driver's seat, leaning across the gap between the seats. Officer Chris Hendry testified the defendant was laying between the front seats with his feet between the van's console and the pedals.

. . . Paramedic Cary Arnes testified the defendant was sitting in the van's driver's seat, slumped toward the console, with his legs on both sides of the console. Arnes said the defendant, who smelled of alcohol, cursed and tried to strike his partner.

. . . .

Lori Roberts, an R.N. who was dining at Amerigo's Restaurant at the time of the collision, testified for the defendant that when she exited the restaurant after the van struck the building, she asked the valet how many people were in the van. Roberts stated the valet replied there were three. Roberts said she then asked him where the third person was and he responded, "He took off." Roberts testified she observed the driver's door was slightly open. She stated she saw the defendant in the floor between the front and back seats with his legs stretched forward against the console. She said the defendant was belligerent, violent, and "very intoxicated." Roberts said the defendant admitted he had been drinking, but denied driving. Roberts testified that as she exited the van after checking the defendant, she said she found a man's slip-on brown loafer on the ground. Its mate was found on the other side of the van. Roberts stated the defendant and the passenger were wearing both of their shoes.

Patrick Winningham, the valet, was recalled and testified he did not see a third person running away from the van. He explained he may have repeated what another person told him. Winningham stated he saw only two Caucasian men in the front of the van.

Vivian French testified for the defendant that she was in the restaurant and saw two Caucasians in the van before it crashed into the restaurant. French said she was delayed from exiting the restaurant and when she reached the outside, she saw an African-American man wearing a ski cap and baggy clothes stepping out of the van as if he had been the driver. French stated the man looked over his shoulders and ran past her.

*Id.*

In June of 2003, the Appellant filed a petition for post-conviction relief, alleging that he was denied the effective assistance of counsel. An evidentiary hearing was held on July 7, 2004, and the post-conviction court denied relief by written order on August 10, 2004. This appeal followed.

**Analysis**

On appeal, the Appellant asserts that trial counsel's representation was deficient because counsel failed to: (1) call witnesses who would testify that he was not driving the vehicle; (2) investigate Officer Vincion's statement to The Tennessean newspaper that three people had been inside the vehicle; (3) investigate a statement by the restaurant's valet to Jill Chambers and Lori Roberts that the driver ran from the crash; (4) hire an accident reconstructionist; (5) investigate the prior DUI conviction; and (6) convey a plea bargain. To succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). The Appellant

must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted)).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Id*. at 461. "[A] trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, *conclusions of law* are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id*.

## I. Additional Witnesses

The Appellant asserts that trial counsel failed to call any witnesses to testify that he was not driving the vehicle at the time of the collision. Specifically, he claims "trial counsel was ineffective in that he had the ability to prove that a 3rd person was in the vehicle, but that the 3rd person was also the driver; ultimately the person responsible for the death of the victim in this case." Although the Appellant claims that he was riding with the third person at the time of the collision, he offers no clue as to the identity of this third person or where the person could be found. Indeed, at trial, the Appellant defended upon grounds that he was not the driver, suggesting that the "homeless African American man" seen near the van following the collision was in fact the driver. The jury rejected this defense at trial. Five or more eyewitnesses at the scene testified that the Appellant was in the driver's seat of the van. Other corroborating evidence also supported the fact that the Appellant was the driver.

If a petitioner seeks to establish deficient performance based upon trial counsel's failure to call a witness, then it is incumbent upon the petitioner to call the witness at the post-conviction hearing to establish that the witness testimony would have benefitted the Appellant and that prejudice has resulted. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). We are not permitted to speculate as to what a witness might have testified to at trial. *Id.* Clearly, trial counsel

may not be faulted for not calling a witness who does not exist or a witness whose testimony is of no benefit to the defense. The record fails to demonstrate that either deficient representation or prejudice resulted from trial counsel's failure to call the mystery third person.

## II. Statement to Newspaper

The Appellant's next allegation of ineffective assistance of counsel is that trial counsel failed to fully investigate an article in The Tennessean newspaper which reported that Officer Vincion had told a reporter that there were three people in the van at the time of the accident as opposed to two. The following questions were propounded to trial counsel by post-conviction counsel at the evidentiary hearing:

> Q: [D]id you have occasion to read an article by Cathy Carlson, who is a staff
> writer for the Tennessean?
> A: I don't recall.
> Q: Do you recall that article saying there were three people in the van?
> A: No.
> Q: You don't recall that?
> A: No.

Because the Appellant has failed to establish that the newspaper article made reference to three people in the van, as suggested by post-conviction counsel, this issue is without merit.

## III. Statement of Valet

The Appellant argues that trial counsel failed to investigate a statement allegedly made by the valet, Patrick Winningham, to two witnesses that he saw the driver of the van run away after the collision. Our review of the record reveals that although Lori Roberts testified at trial that Winningham told her three people had been inside the van and that the third person "took off," Winningham testified that immediately after the crash, he discovered the Appellant in the driver's seat along with an unconscious passenger. He denied having ever seen a third person who ran from the scene and related that he may have repeated what another person told him. Regarding this allegation, the trial court concluded, "Mrs. Roberts and Mr. Winningham testified at trial, and the jury properly weighed their testimony of the events." We agree. Trial counsel could have done nothing to further investigate the statement as Winningham fully explained his version of the events at trial.

## IV. Accident Reconstructionist

The Appellant also asserts that trial counsel was ineffective in failing to secure an accident reconstructionist. At the post-conviction hearing, trial counsel testified, "in my experience with reconstructionists, . . . my personally looking at the scene, I just didn't see anything that a reconstructionist could do that would help." Again the Appellant fails to explain how the hiring of

an accident reconstructionist would have been of benefit, especially in view of the fact that the Appellant defended upon the grounds, and continues to assert, that he was not the driver of the van. Moreover, the Appellant offers no suggestion as to how a reconstructionist would have been of benefit. Because no accident reconstructionist was called by the Appellant at the post-conviction hearing, we are not permitted to speculate that an accident reconstructionist's testimony would have been of benefit to the Appellant. *Id.* This claim is without merit.

## V. Previous DUI Conviction

The jury in this case enhanced the Appellant's conviction from vehicular homicide to aggravated vehicular homicide based in part upon his prior DUI judgment of conviction. The Appellant contends, however, that because trial counsel did not personally go to Giles County to investigate the validity of this conviction, trial counsel's assistance in this case was ineffective. After review of the record, we conclude that this court has previously determined that the Appellant's previous judgment of conviction for DUI was facially valid. *State v. Jimmy M. Millican*, No. M2000-02298-CCA-R3-CD.

## VI. Conveyance of Plea Agreement

Lastly, the Appellant contends that trial counsel was ineffective in failing to convey to him a seventeen-year plea agreement, which he claims that he would have accepted rather than going to trial. Trial counsel's testimony at the post-conviction hearing materially contradicted that of the Appellant. Trial counsel testified that he did communicate the plea offer to the Appellant, and the Appellant maintained his innocence. The post-conviction court accredited the testimony of trial counsel, and we will not reweigh or reevaluate the factual issues resolved by the trial court. The record does not preponderate against these findings. For these reasons, we find Appellant's allegation of deficient performance without merit.

### CONCLUSION

Based on the foregoing, the judgment of the Davidson County Criminal Court is affirmed.

_____
DAVID G. HAYES, JUDGE